**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | | |
|---|---|---|
| 180S, INC. and 180S, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | No.: 1:08-cv-00177-JFM |
| | ) | |
| v. | ) | Judge J. Frederick Motz |
| | ) | |
| GORDINI U.S.A., INC, | ) | Magistrate Judge Paul W. Grimm |
| | ) | |
| Defendant. | ) | |

DEFENDANT GORDINI'S INITIAL MARKMAN
CLAIM CONSTRUCTION BRIEF

Patrick R. Buckler
Spence & Buckler, P.C.
100 West Pennsylvania Ave.
Suite 301
Towson, Maryland 21203
Telephone: (410) 823-5003
Fax: (443) 927-8905

Robert H. Smeltzer
Lowis & Gellen LLP
200 West Adams Street
Suite 1900
Chicago, Illinois 60606
Telephone: (312) 364-2500
Fax: (312) 364-1003

Richard P. Beem
Beem Patent Law Firm
53 W. Jackson Blvd., Suite 1352
Chicago, IL 60604
Telephone: (312) 201-0011
Fax: (312) 201-0022

Dated:  February 16, 2010

ATTORNEYS FOR DEFENDANT,
GORDINI U.S.A., Inc.

## TABLE OF CONTENTS

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.  Claim construction is a prerequisite
        to any infringement analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.  Expert Dr. James H. Oliver's report and video
        animations are provided to assist the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

II.  U.S. Patent 6,978,483 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    A.  The Accused Gordini Lobz® Earmuff is
        entirely different than the '483 patent-in-suit . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    B.  The '483 patent should be construed narrowly
        in view of extensive relevant prior art . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    C.  Asserted claims 3 and 4 should be interpreted in view
        of the entire patent, including the specification and drawings . . . . . . . . . . . . . . .6

          1.  Each first, second and third frame "member"
              requires a unitary component that is coupled to
              and moves with respect to other unitary components . . . . . . . . . . . . . . . . . . . 7

          2.  "Passageway" is a loop, like a belt loop, having a perimeter
              fully enclosing an opening and is topologically genus one . . . . . . . . . . . . . . 9

          3.  "Projection" is a tooth-like extension
              protruding radially from a member surface . . . . . . . . . . . . . . . . . . . . . . . . . . .11

          4.  "Plurality of Projections" requires a large number of tooth-like
              extensions protruding radially from a member surface . . . . . . . . . . . . . . . . .12

          5.  The four above-identified term constructions
              must be understood in the context of the claims;
              thus, claim 3 further requires three assembly steps . . . . . . . . . . . . . . . . . . .14

          6.  180s waived any proposed constructions of the
              remaining elements of the claims of the '483 patent . . . . . . . . . . . . . . . . . 15

    D.  When the claims are construed properly, 180s cannot fulfill its burden
        of proving infringement of any asserted, valid claim of the '483 patent . . . . . . .17

III. U.S. Patent 6,978,645 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

A. The apparatus of the '645 patent is unlike both
the prior art and Gordini's LOBZ® stereo earmuff . . . . . . . . . . . . . . . . . . . . . .20

B. The scope of the claims of the '645 patent
is narrow in view of the extensive prior art
and 180s' prosecution history estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C. The claims of the '645 patent contain two
key phrases that require construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1. An Opening That Communicates With The Receptacle, The
Opening Being Disposed Proximate The Interior Side Of The Frame . . . . . 25

a. The "opening" must be interior . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

b. "Communicating" requires continuous, unimpeded
access to the receptacle by the wearer during use to allow
the user to connect and disconnect a device such as an iPOD . . . . . . . . .25

c. 180s ignores the arguments made during
prosecution and would construe claim elements
in light of Gordini's LOBZ® stereo earmuff . . . . . . . . . . . . . . . . . . . . . .28

2. The Connector Being Disposed Proximate
To The [Interior] Opening Of The Receptacle . . . . . . . . . . . . . . . . . . . . . . . .30

a. The jack must be proximate the interior side
of the frame, near or within the opening . . . . . . . . . . . . . . . . . . . . . . . . 30

b. 180s' proposed construction of "disposed proximate"
ignores the context in which that phrase is used in the claims . . . . . . . . .31

D. 180s waived any proposed constructions of the
remaining elements of the claims of the '645 patent . . . . . . . . . . . . . . . . . . . . . .31

E. When the claims are construed correctly, 180s cannot fulfill its burden
of proving infringement of any asserted, valid claim of the '645 patent . . . . . . .32

III. The '001 Design Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

A. Where to find information relevant to the '001 design patent . . . . . . . . . . . . . .35

B.  Issues for Markman claim construction of '001 design patent . . . . . . . . . . . . . . 35

C.  Claim construction for the '001 design patent . . . . . . . . . . . . . . . . . . . . . . . . . . .35

    1.  Construction requires describing the conventions in design
       patent drafting, i.e.,  the role of broken lines and solid lines . . . . . . . . . . . . .36

    2.  A design patent is limited to ornamental not functional features . . . . . . . . . 38

    3.  Egyptian Goddess directs the trial court to point
       out various ornamental features of the claimed design
       as they relate to the accused design and the prior art . . . . . . . . . . . . . . . . . . .41

       a.  Ornamental features disclosed in the prior art . . . . . . . . . . . . . . . . . . . . .41

       b.  Egyptian Goddess imposes a duty to point out
          various ornamental features of the claimed design
          as they relate to the accused design and the prior art . . . . . . . . . . . . . . .43

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

# TABLE OF AUTHORITIES

**Cases:**

*Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343 (Fed. Cir. 2003) . . . . . . . . . . 30

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F. 2d 428 (6th Cir. 1933) . . .39

*Autogiro Co. of Am. v. United States*, 384 F.2d 391 (Ct. Cl. 1967) . . . . . . . . . . . . . . . . .1

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000) . . . . . . . . 27

*Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563 (Fed. Cir. 1996) . . . . . . . . . . . 3, 39

*Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc) . . . . . . . . 27

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) . . . . . . . . .30

*Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317 (Fed. Cir. 2001) . . . . . . .13

*Digene Corp. v. Third Wave Techs., Inc.*, 323 Fed. Appx. 902 (Fed. Cir. 2009) . . . . . . . 2

*Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308 (Fed. Cir. 2001) . . . . . . . . . . . 35

*Durling v. Spectrum Furniture Co.*, 101 F.3d 100 (Fed. Cir. 1996) . . . . . . . . . . . . . . . 36

*Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008) (en banc) . . . . . . . passim

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) . . . 1, 25, 27

*Gorham v. White*, 81 U.S. 511 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*In re Blum*, 374 F.2d 904 (CCPA 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*In re Carletti*, 328 F. 2d 1020 (CCPA 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

*Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 24

*Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 35

*Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998) . . . . . . . . . . . . .2

*Maytag Corp. v. Electrolux Home Products, Inc.*, 411 F. Supp.2d 1008
(N.D. Iowa 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed. Cir. 2005) . . . . . . . . . . . . . . 28

*Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) . . . . . . . . . . 16

*National Recovery Techs. Inc. v. Magnetic Separation Sys. Inc.*, 166 F.3d 1190
(Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) . . 16

*OddzOn Prods. v. Just Toys*, 122 F.3d 1396 (Fed. Cir. 1997) . . . . . . . . . . . . . 3, 36, 38, 40

*Phillips v. AWH Corp.*, 415 F. 3d 1303 (Fed. Cir. 2005) (en banc) . . . . . . . 1, 3, 13, 26, 28

*Power Controls v. Hybrinetics*, 806 F.2d 234, 238-39 (Fed. Cir. 1986) . . . . . . . . . . . . 40

*Quikey Mfg. Co. v. City Products Corp.*, 409 F.2d 876 (6th Cir. 1969) . . . . . . . . . . 6, 22

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 39

*Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 932 F.2d 1453 (Fed. Cir. 1991) . . . . . 5, 21

*Smith v. Whitman Saddle*, 148 U.S. 674 (1893) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . 23

*Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (en banc) . . . . . . . . 28

*Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989) . . . . . . . . . 19, 34

*Welker Bearing Co. v. PHD, Inc.*, 528 F. Supp. 2d 683 (E.D. Mich. 2007) . . . . . . . . . . 16

*WhitServe LLC v. Computer Patent Annuities N. Am., LLC*, No. 3:04-CV-01897, 2006
WL 1273740 (D. Conn. May 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 32

**Statutes**

35 U.S.C. § 171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**Regulations**

37 C.F.R. § 1.152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

**Rules**

Rule 56(e)(2), Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 32

**Manual of Patent Examining Procedure (MPEP)**

1503.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

1503.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

## <u>TABLE OF EXHIBITS</u>

EXHIBIT

| | |
|---|---|
| 1 | US 6,978,483 ('483 patent) |
| 2 | US 7,212,645 ('645 patent) |
| 3 | US D545,001 ('001 patent) |
| 4 | Gordini's '483 patent claim construction |
| 5 | Gordini's '645 patent claim construction |
| 6 | Gordini's '001 patent claim construction |
| 7 | Expert Report and Declaration of James H. Oliver |
| 7A | Exhibit to Export Report, Curriculum Vitae of James H. Oliver |
| 7B | Exhibit to Export Report, Gordini's '483, '645, '001 claim constructions |
| 8A | '483 Video (on CD) |
| 8B | '645 Video (on CD) |
| 8C | '001 Video (on CD) |
| 8D | Lobz Video (on CD) |
| 9 | US 4,542,803 to Houng |
| 10 | 180s' February 2, 2010 Letter re claim construction of '483 patent |
| 11 | 180s' February 4, 2010 E-mail re disputed claim constructions |
| 12 | US 6,888,950 to Siskin, et al. |
| 13 | March 3, 2006 Office action to 180s |
| 14 | 180s' July 31, 2006 response to Office action |
| 15 | 180s' January 19, 2010 letter with proposed constructions |
| 16 | 180s' response to Gordini's Sixth Set of Interrogatories (including its exhibit A) |

## I. Introduction

The Court is requested to construe six key claim terms in context of asserted U.S. patent 4,978,483 ('483 patent) and U.S. patent 7,212,645 ('645 patent), plus the single design patent claim of U.S. design patent D545,001 ('001 patent), as a matter of law, which will narrow the issues in dispute in this case.  *See* Exhs. 1, ('483 patent), 2 ('645 patent), and 3 ('001 patent); Exhs. 4 (Gordini February 2, 2010 claim construction of '483 patent), 5 (Gordini February 2, 2010 claim construction of '645 patent), and 6 (Gordini February 2, 2010 claim construction of '001 patent).

### A. Claim construction is a prerequisite to any infringement analysis.

"The first step [before an infringement analysis] is determining the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).

Claim construction is based on sources including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms and the state of the art." *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314 (Fed. Cir. 2005)(en banc)(terms are to be interpreted in view of other terms in the same or other claims and in view of the "entire" patent).

Further, "claim language does not exist in a vacuum; it must be understood by reference to the documents annexed to the patent grant, including the specification, of which the claims are a part, and any drawings." *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 397 (Ct. Cl. 1967), cited with approval in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).

In this brief, Gordini focuses on *six* key claim terms or phrases in context. *See* '483 constructions, Exh. 4; '645 constructions, Exh. 5; '001 constructions, Exh. 6.  The terms and phrases include:

| '483 patent | '645 patent |
|---|---|
| 1.  member | 1.  opening that communicates with the receptacle, the opening being disposed proximate the interior side of the frame |
| 2.  passageway | 2.  connector being disposed proximate the opening of the receptacle |
| 3.  projection | |
| 4.  plurality of projections | |

Additionally, the Court is requested to construe the single design patent claim, and to determine that it is directed primarily to functional, not ornamental features.

All of the constructions are amply supported; adoption of even *one* construction for the '483 patent and *one* construction for the '645 patent will lead to judgment of non-infringement as a matter of law.  *Digene Corp. v. Third Wave Techs., Inc.*, 323 Fed. Appx. 902, 909-910 (Fed. Cir. 2009) (no need to address remaining claim construction arguments after admission that one element was not present in accused compound).  Where there is one missing element, there is no need to construe all the terms.  *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (no infringement if even one element missing); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence").

As for the '001 design, Gordini showed long ago that the claimed portion is primarily (if not entirely) functional and 180s failure to respond or even to attempt to articulate any

ornamental features is grounds for holding that the '001 design is invalid as primarily functional, *see Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563, 1565-66 (Fed. Cir. 1996), and/or is entitled to only narrow scope leading to judgment of non-infringement. *OddzOn Prods. v. Just Toys*, 122 F.3d 1396 (Fed. Cir. 1997).

In sum, construing the six key claim terms in context and the single design patent claim will narrow the issues in dispute in this case. *See* '483 constructions, Exh. 4, '645 constructions, Exh. 5, and '001 constructions, Exh. 6.

### B. Expert Dr. James H. Oliver's report and video animations are provided to assist the Court.

As extrinsic evidence, Gordini relies upon expert testimony of expert Dr. James H. Oliver Exh. 7, Oliver. Decl.  *See Phillips*, 415 F. 3d at 1314 (admissibility of extrinsic evidence concerning relevant scientific principles, the meaning of technical terms and the state of the art). Dr. Oliver supervised the preparation of animations and still pictures for general understanding, explanation and to illustrate the patents-in-suit. *See* Oliver Decl., Exh. 7 at 3.  The animations, exhibits 8A through 8D, include the following videos:

| Exhibit | Video | File Name |
|---------|-------|-----------|
| 8A | '483 | 180s_Patent_483.wmv |
| 8B | '645 | 180s_Patent_645_prosecution.wmv |
| 8C | '001 | 180s_Patent_001.wmv |
| 8D | Lobz | Gordini_Lobz_earmuff.wmv |

3

## II.    U.S. Patent 6,978,483

Turning to 180s' U.S. Patent 6, 978, 483, the Court is requested to construe four key claim terms in context, including "member," "passageway," "projection" and "plurality of projections," as a matter of law, which will narrow the issues in dispute in this case.  *See* '483 constructions, Exh. 4.  The Court's adoption of any one of these constructions will lead to judgment of non-infringement, *sua sponte*, if the Court so chooses, or upon motion if the Court prefers.

### A.  The Accused Gordini Lobz® Earmuff is entirely different than the '483 patent-in-suit.

Expert Dr. James H. Oliver has prepared two short videos to assist the Court.  *See* Oliver Decl., Exh. 7 at 3, and '483 video, Exh. 8A, and Lobz video, Exh. 8D.

**'483 PATENT-IN-SUIT**




**FIG. A**
**(ear warmer frame in '483 patent**
**'483 video at 3:15)**

**FIG. B**
**(ear warmer frame &**
**fabric of '483 patent,**
**'483 video at 3:38)**

180s asserts claims 3 and 4 of U.S. Patent 6,978,483.  Claim 3 is a method of assembling an ear warmer frame, *see* FIGS. A and B.  FIG. A is a comparison of Figure 17 of the '483 patent, which was elected during prosecution of the '483 patent, to a three-dimensional view of the assembled frame of Figure 17 of the '483 patent.  *See* '483 video, Exh. 8A; Oliver Decl.,

4

Exh. 7 at 3, 10-11.  FIG. B is a representation of an ear warmer frame covered in fabric, as

described in the '483 patent, and as it is intended to be worn.  *See* '483 video; Exh. 8A; Oliver

Decl. at 3, 10-11.

### ACCUSED GORDINI LOBZ® EARMUFF





**FIG. C-1**
**(Gordini Lobz Frame Sections,**
**Lobz video at 1:43)**

**FIG. C-2**
**(Gordini Lobz Earmuff,**
**Lobz video at 0:05)**

In contrast to the '483 patent, FIG. C-1 depicts the elements (or frame sections) of

Gordini's earmuff structure, and FIG. C-2 is the assembled Gordini Lobz® earmuff.  *See* Lobz

video, Exh. 8D; Oliver Decl., Exh. 7 at 7.

**B.  The '483 patent should be construed**
**narrowly in view of extensive relevant prior art.**

180s' alleged invention as disclosed and

claimed in the '483 patent is at best a narrow

improvement in a crowded field of prior art.  *See, e.g.*,

Fig. D, a portion of Figure 2 of U.S. Patent 4,542,803,

attached as Exh. 9; Oliver Decl., Exh. at 4-5.  Thus,

the claims of the '483 patent should be construed

narrowly. *See Slimfold Mfg. Co. v. Kinkead*



**FIG.D: Portion of Fig. 2 of**
**U.S. Patent 4,545,803**

*Industries, Inc.*, 932 F.2d 1453, 1457-58 (Fed. Cir. 1991) (mechanical combination in a crowded

field entitled to only narrow scope of equivalents); *Quikey Mfg. Co. v. City Products Corp.*, 409 F.2d 876, 878 (6th Cir. 1969) ("the narrower the invention and the more crowded the art, the more strict will be the construction of the patent claims").

### C. Asserted claims 3 and 4 should be interpreted in view of the entire patent, including the specification and drawings.

Asserted claims 3 and 4 are directed to a method of assembling an ear warmer frame. During the prosecution of the application that issued as the '483 patent, the Patent Office required 180s to choose among or "elect" between the various ear warmer frames depicted in the application's figures. 180s elected Figures 16 and 17, as representative of an ear warmer frame to be assembled according to the method of claims 3 and 4. *See* FIGS. E and F; '483 patent, Exh. 1 at 13; '483 video, Exh. 8A at 2:40.



**FIG. E (fig. 17 of '483 patent)**



**FIG. F ('483 video at 2:40)**

Asserted claim 3, with steps numbered for ease of reference, states:

3. A method of assembling an ear warmer frame, the ear warmer frame including a first frame member including a passageway and a projection, a second frame member including a plurality of projections, and a third frame member including a passageway and a projection, said method comprising:
    (1) inserting the second frame member into the first frame member passageway;
    (2) engaging the projection on the first frame member with the plurality of projections on the second frame member; and
    (3) coupling the second frame member and the third frame member.

Asserted claim 4 of the '483 patent, with the two steps labeled (a) and (b) for ease of reference, states:

The method of claim 3, wherein said coupling the second frame member and the third frame member comprises: inserting the second frame member into the third frame member passageway; and engaging the projection on the third frame member with the plurality of projections on the second frame member.

The Court is requested to construe four key phrases that, when properly construed in the context of the claims and patent as a whole, will establish that Gordini does not infringe any valid claim of U.S. Patent 6,978,483. These phrases include: "member," "passageway," "projection" and "plurality of projections," in the context of the "method of assembling" claims and other intrinsic and extrinsic evidence. Proposed constructions for these and other phrases of the asserted claims are discussed below and are summarized in an attached exhibit. *See* '483 constructions, Exh. 4.

      **1. Each first, second and third frame "member" is a unitary component that is coupled to and moves with respect to other unitary components.**

Asserted claims 3 and 4 each require three members or frame members – a first frame member, a second frame member and a third frame member. *See* '483 patent claims 3 and 4; FIGS. G and H; '483 video, Exh. 8A at 0:30. Additionally, claim 3 requires the steps of:

(1) inserting the second frame member into the first frame member passageway;

(2) engaging the projection on the first frame member with the plurality of projections on the second frame member; and

(3) coupling the second frame member and the third frame member.



FIG. G (fig. 17 of '483 patent)

In the context of the '483 patent, "member" means a *unitary component*. The specification of the '483 patent distinguishes between a frame that is a single piece versus a frame that is made of "several components." *See* '483 patent, Exh. 1 at col. 1, ll. 43-45 ("In one embodiment [not claimed in claims 3 or 4], the frame is a single frame member. In alternative embodiments [as claimed in claims 3 or 4], the frame includes multiple components."). In addition, the '483 patent specification states that elected

"FIGS. 16-17 illustrate a frame for use in constructing an ear warmer …. Frame 600 includes *several components* that *move relative to each other* to adjust the overall length of the frame 600" (emphasis added), and "frame 600 includes a band 610 and ear frame members 620 and 630 that are slidably coupleable to the band 610." *See* '483 patent, Exh. 1 at col. 7, ll. 39-45; FIGS. G and H.



FIG. H ('483 video at 0:30)

180s flatly refuses to construe the basic term "member." *See* 180s' February 2, 2010 claim construction of '483 patent, Exh. 10 at 1. This refusal is not helpful to the Court, but it

does suggest that 180s knows that any reasonable construction of "member" will be fatal to its case.

Thus, the Court should adopt Gordini's undisputed construction of the term "member" as "unitary component that is coupled to and moves with respect to other unitary components," as it has a meaning supported and based on the entire patent.  *See* constructions, Exh. 4 at 2; Oliver Decl., Exh. 7 at 3.

> **2.   "Passageway" is a loop, like a belt loop, having a perimeter fully enclosing an opening and is topologically genus one.**



**FIG. I (part of fig. 17 of '483 patent)**

Asserted claim 3 requires that a "first frame member includes a *passageway* and a projection" and a "third frame member includes a *passageway* and a projection" and further requires the step of "inserting the second frame member into the first frame member *passageway*." *See* '483 patent claim 3, '483 patent, Exh. 1 at 13; FIGS. I and J; '483 video, Exh. 8A at 0:42.  Asserted claim 4 further requires a step of "inserting the second frame member into the third frame member passageway."  *See* '483 patent claim 4, '483 patent, Exh. 1 at 13; FIGS. I and J; '483 video, Exh. 8A at 0:42.

The specification of the '483 patent supports a construction of "passageway" as a loop, like a belt loop, having a perimeter fully enclosing an opening.  *See* constructions, Exhibit 4 at 3; Oliver Decl., Exh. 7 at 6.  Specifically, the specification of the '483 patent states "the ear frame member 620 includes *a passageway 626 that forms an opening 628.  To couple band 610 to ear frame member 620, end 618 is inserted into opening 628 of passageway 626*," and "the ear frame



**FIG. J ('483 video at 0:42)**

member 630 includes *a passageway 636 that forms an opening 638.* To couple band 610 to ear frame member 630, end 616 is inserted into opening 638 of passageway 636." *See* '483 patent, Exh. 1 at col. 7, ll. 57-60 and col. 7, l. 65 – col. 8, l. 2 (emphasis added); FIGS. I and J; '483 video, Exh. 8A.

Further, each passageway, as shown in FIGS. I and J, is topologically genus one. *See* constructions, Exh. 4 at 3; Oliver Decl., Exh. 7 at 5-6; '483 video, Exh. 8A.  A topological genus is an integer that represents the number of openings or through-holes along a closed simple surface. *Id.*  (For example, a coffee mug handle, i.e., a single opening, is topologically genus one.)  In other words, topological genus one is the number of openings, e.g., one opening, along a closed surface.

180s would construe "passageway" to be a "long, narrow way, typically having walls on either side, that allows access."  *See* 180s' constructions, Exh. 10 at 2.  This is a definition for a *hallway*, and it does *not* apply in any way to an *earmuff*.  Instead, based on the intrinsic evidence here, "passageway," as shown in FIGS. I and J, is a loop, like a belt loop.  *See* Gordini's constructions, Exh. 4 at 3; Oliver Decl., Exh. 7 at 5-6; '483 video, Exh. 8A.

In sum, "passageway" in claims 3 and 4 should be construed as "a loop, like a belt loop, having a perimeter fully enclosing an opening and is topologically genus one," as it has a meaning supported and based on the entire patent. *See* constructions, Exh. 4 at 3; Oliver Decl., Exh. 7 at 5-6.

### 3.   "Projection" is a tooth-like extension protruding radially from a member surface.





**FIG. K (part of fig. 17 of '483 patent)**          **FIG. L ('483 video at 0:47)**

Asserted claim 3 requires that a first frame member and a third frame member each include "a passageway and a *projection*."  Claims 3 and 4 further require engaging the respective first and third frame member *projections* with the plurality of projections on the second frame member.  *See* '483 patent claims 3 and 4; FIGS. K and L; '483 video, Exh. 8A.

As shown in FIGS. O and P, a "projection" is a tooth that must protrude from a surface of the "first frame member" in a radial direction, such that each "projection" engages the "plurality of projections," as required by claim 3.  *See* FIGS. K and L; constructions, Exh. 4 at 4; Oliver Decl., Exh. 7 at 6.

In describing the "projection" of the "first frame member" shown in the patent figures, the specification of the '483 patent states "a protrusion 624 is disposed proximate to end 622 [of first frame member 620]" and "a protrusion 634 is disposed proximate to end 632 [of third frame member 630]."  *See* '483 patent, Exh. 1 at col. 7, ll. 56-57 and 65-66; FIGS. K and L; Oliver Decl., Exh.7 at 6.

While 180s would construe "projection" to be "something that extends outward," *see* Exh. 10 at 2, this construction is vague and indefinite and ignores the intrinsic evidence of the '483 patent, which requires the projection to have a definite shape and a direction to engage with a plurality of projections. *See* FIGS. K and L.

In sum, "projection" in claim 3 (and the similar phrase in claim 4) should be construed as "a tooth-like extension protruding radially from a member surface," as it has a meaning supported and based on the entire patent. *See* constructions, Exh. 4 at 4; Oliver Decl., Exh. 7 at 6.

### 4. "Plurality of Projections" requires a large number of tooth-like extensions protruding radially from a member surface.



**Figure M (part of fig. 17 of '483 patent)**

Asserted claim 3 requires that a first frame member and a third frame member each include "a passageway and a projection," and claims 3 and 4 further require engaging the respective first and third frame member projections with the *plurality of projections* on the second frame member. *See* '483 patent claims 3 and 4; '483 video, Exh. 8A.

As shown in FIGS. M and N, the plurality of projections are a large number of projections that are consecutive ridges or teeth formed along the entire length of the second member and are equally spaced and protrude radially inwardly to engage "the projection on the first frame member," as required by claim 3.



**FIG. N ('483 video at 1:05)**

*See* FIGS. M and N; Oliver Decl., Exh. 7 at 6; '483 video, Exh. 8A.  According to the

specification, "band 610 includes ridges or projections 615 formed on the inner surface 614."

*See* '483 patent, Exh. 1 at col. 7, ll. 47-49; FIGS. M and N; Oliver Decl., Exh. 7 at 6.  Moreover,

as shown in FIGS. M and N, the "projection" on the first and third frame members protrude

radially outward from a member surface and have an identical tooth-like shape as the plurality of

projections on the second frame member.

180s argues that *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327-29

(Fed. Cir. 2001), requires construing "plurality" as two or more absent some indication to the

contrary.  *See* Exh. 10 at 2.  Here, the intrinsic evidence provides a contrary indication, requiring

"plurality" to mean a large number. *See* FIGS. M and N; Oliver Decl., Exh. 7 at 6.  Specific

intrinsic construction trumps a broader dictionary definition or extrinsic evidence, *see Phillips*,

415 F. 3d 1303, 1317 (Fed. Cir. 2005)(en banc)(while extrinsic evidence, such as dictionaries,

can shed useful light on the relevant art, it is less significant than the intrinsic record), and, in any

event, Merriam-Webster defines "a plurality" as "a large number," Merriam-Webster Online

(2010), *available at* http://www.merriam- webster.com/dictionary/plurality, which is entirely

consistent with the teachings of the '483 patent. *See* Oliver Decl., Exh. 7 at 6.

Further, the "ear warmer frame" disclosed in the '483 patent, and particularly the "second

frame member," would not be adjustable (and thus not enabled) without a large number of tooth-

like extensions for engaging a tooth-like extension on the first frame member and a tooth-like

extension on the third frame member.  *See National Recovery Techs. Inc. v. Magnetic Separation*

*Sys. Inc.*, 166 F.3d 1190, 1196-97 (Fed. Cir. 1999) (scope of claims is less than or equal to scope

of enablement).

In sum, "plurality of projections" in claim 3 (and the similar phrase in claim 4) should be construed as "a large number of tooth-like extensions protruding radially from a member surface" as it has a meaning supported and based on the entire patent.  *See* constructions, Exh. 4 at 5; Oliver Decl., Exh. 7 at 6.

### 5. The four above-identified term constructions must be understood in context; thus, claim 3 further requires three assembly steps.

The first step of claim 3 requires inserting the unitary headband component ("second frame member") *into* the loop having a perimeter fully enclosing an opening and is topologically genus one ("passageway") of the unitary ear component ("first frame member").  *See* FIG. F.  Turning to the '483 specification, it states "To couple band 610 to ear frame member 620, end 618 is inserted into opening 628 of passageway 626."  *See* '483 patent, Exh. 1 at col. 7, ll. 58-60; FIG. O; Oliver Decl., Exh. 7 at 6.  As such, based on the intrinsic evidence, "inserting" is placing fully into and completely through.  *See* FIG. O; Oliver Decl., Exh. 7 at 6; constructions, Exh. 4 at 8; '483 video, Exh. 8A at 1:42.



**FIG. O ('483 video at 1:42)**

The second step requires engaging the tooth-like extension that protrudes radially from surface ("projection") of the unitary ear component ("first frame member") with the large number of tooth-like extensions that protrude radially from the surface ("plurality of



**FIG. P ('483 video at 1:45)**

14

projections") of the unitary headband component ("second frame member"). *See* FIG. P; Oliver

Decl., Exh. 7 at 6; constructions, Exh. 4 at 9; '483 video, Exh. 8A at 1:45.



The third step is coupling the unitary

(headband) component and another unitary

(ear) component.  *See* FIG. Q; constructions,

Exh. 4 at 10; '483 video, Exh. 8A at 1:59.

**FIG. Q ('483 video at 1:59)**

### 6. 180s waived any proposed constructions of the remaining elements of the claims of the '483 patent

In addition to the claim constructions highlighted above, Gordini's proposed

constructions for the other phrases of the asserted claims of the '483 patent are summarized in an

attached exhibit.  *See* Exh. 4.

Gordini has tried for many months to obtain 180s' proposed constructions for the

elements of 180s' claims.  Although Gordini is entitled to these constructions and provided 180s

with its constructions, 180s has refused to provide constructions for all but a few terms.  *See*

180s' constructions, Exh. 10 at 1-2.

After the February 2, 2010 deadline for the parties to exchange construction of disputed

terms, 180s stated that it disputed "virtually all" of Gordini's constructions but it did not propose

any alternative constructions.  *See* 180s' February 4, 2010 e-mail to Gordini's counsel, Exh. 11

at 1.  This does not rise to the level of a good faith dispute. *See WhitServe LLC v. Computer*

*Patent Annuities N. Am., LLC*, No. 3:04-CV-01897, 2006 WL 1273740, 3 (D. Conn. May 9,

2006)("party offering a vague formulaic response to a claim construction interrogatory may be

precluded from offering any further evidence of claim interpretation at later stages in the

litigation"); *cf.* Rule 56(e)(2), Fed. R. Civ. P. (party opposing summary judgment may not rely

solely on allegations or denials but must set forth specific facts).  In 180s' February 11, 2010

letter to the Court, 180s for the first time offered a blanket "ordinary meaning" contention,

without context or support, for all the terms it has refused to construe for each of the patents-in-

suit.  *See* Doc. 111.  180s' proposal does not rise to the level of a dispute, is untimely and should

be given no weight.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

1361 (Fed. Cir. 2008)(determination that a claim term "needs no construction" or has the "plain

and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or

when reliance on a term's "ordinary" meaning does not resolve the parties' dispute); *see also*

*Welker Bearing Co. v. PHD, Inc.,* 528 F. Supp. 2d 683, 694 (E.D. Mich. 2007), quoting *Maytag*

*Corp. v. Electrolux Home Products, Inc.*, 411 F. Supp.2d 1008, 1037 (N.D. Iowa 2006)(asserting

that [ordinary] meaning should apply, without further construction, merely begs the question of

what that meaning is).

      Claim construction that gives meaning to all the terms of the claim is preferred over one

that does not do so.  *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir.

2005).  A patentee that fails to explain its positions on claim construction during discovery can

and should be barred from advancing such positions during a Markman hearing or at trial.

*WhitServe*, 2006 WL 1273740 at 3 ("party offering a vague formulaic response to a claim

construction interrogatory may be precluded from offering any further evidence of claim

interpretation at later stages in the litigation").  As such, this Court should bar 180s from

advancing constructions on claim terms that it did not present on or before this Court's deadline

of February 2, 2010.

In sum, constructions for the terms not discussed herein are undisputed (notwithstanding 180s' late generalized dispute of "virtually all" constructions) and should be adopted by the Court.  *See* constructions, Exh. 4.

**D.  When the claims are construed properly,**
**180s cannot fulfill its burden of proving infringement**
**of any asserted, valid claim of the '483 patent**

Claim 3 is a method of assembling an ear warmer frame, *see* FIGS. A and B.  FIG. A is a comparison of Figure 17 of the '483 patent, which was elected during prosecution of the '483 patent, to a three-dimensional view of the assembled frame of Figure 17 of the '483 patent.  *See* '483 video, Exh. 8A.  FIG. B is a representation of an ear warmer frame covered in fabric as described in the '483 patent, and as needed to protect the user from all the otherwise exposed hardware.

**'483 PATENT-IN-SUIT**

**FIG. A**
**(ear warmer frame in '483 patent**
**'483 video at 3:15)**

**FIG. B**
**(ear warmer frame &**
**fabric of '483 patent,**
**'483 video at 3:38)**

In contrast to the '483 patent, FIG. C-1 depicts the elements (or frame sections) of Gordini's earmuff structure, and FIG. C-2 is the assembled Gordini Lobz® earmuff.  *See* Lobz video, Exh. 8D.  The accused Gordini Lobz® earmuff has five members – a left ear piece, a right

ear piece, a band section, a left end section and a right end section.  Each end section has a slot

therein with two opposing nibs therein.  Each ear piece has a post with an ear piece cap.  A

section of recesses are positioned along a portion of the post.  Turning to assembly, an ear piece

mates with an end section, such that at least one recess mates with at least one nib.  Moreover,

when the ear piece and end section are mated together, the ear piece may slide within the slot of

the end section.

### ACCUSED GORDINI LOBZ® EARMUFF




| **FIG. C-1** | **FIG. C-2** |
| **(Gordini Lobz Frame Sections,** | **(Gordini Lobz Earmuff,** |
| **Lobz video at 1:43)** | **see Lobz video at 0:05)** |

Further to the constructions discussed herein, Gordini Lobz® earmuff does not infringe

any valid claim of the '483 patent for at least the following reasons:

1.  The Gordini Lobz® earmuff does not have three specific *"members"* with the

    particulars as required by claim 3 and, as such, the Gordini Lobz® earmuff does not

    perform the three assembly steps as required by claim 3.  For example, the Gordini

    Lobz® earmuff does not perform an assembly step of "coupling [an alleged] second

    frame member and [an alleged] third frame member."  *See* Oliver. Decl., Exh. 7 at 6.

2.  The Gordini Lobz® earmuff does not have a *"passageway"* on a "first frame

    member" and, as such, the Gordini Lobz® earmuff does not perform an assembly step

18

of "inserting [an alleged] second frame member into [an alleged] first frame member passageway." *See* Oliver. Decl., Exh. 7 at 7-10.

3.   The Gordini Lobz® earmuff does not have a *"projection"* on a "first frame member" and, as such, the Gordini Lobz® earmuff does not perform an assembly step of "engaging [an alleged] projection on [an alleged] first frame member with [an alleged] plurality of projections on [an alleged] second frame member." *See* Oliver. Decl., Exh. 7 at 7-10.

4.   The Gordini Lobz® earmuff does not have a *"plurality of projections"* on a "second frame member" and, as such, the Gordini Lobz® earmuff does not perform an assembly step of "engaging [an alleged] projection on [an alleged] first frame member with [an alleged] plurality of projections on [an alleged] second frame member." *See* Oliver. Decl., Exh. 7 at 7-10.

As a matter of law, because the Gordini Lobz® earmuff does not infringe independent claim 3, it cannot infringe dependent claim 4 that depends therefrom. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

In sum, this Court's adoption of the constructions above for any one or more of the four key terms of the '483 patent will lead to judgment that the accused Gordini Lobz® earmuff does not infringe any valid claim of the '483 patent, because the Gordini Lobz® earmuff does not include all the required elements and required steps of asserted claims 3 and 4 of the '483 patent. *See* Oliver. Decl., Exh. 7 at 6-10.

19

### III.    U.S. Patent 6,978,645

180s alleges that Gordini infringes claims 1-4 and 7-15 of U.S. Patent 6,978,645 to Le Gette, et al. (hereinafter "the '645 patent"), which is titled "Ear Warmer With a Speaker System." *See* '645 patent, Exh. 2.  As set forth below, Gordini asks the Court to rule on the construction of two phrases in context: "an opening that communicates with the receptacle, the opening being disposed proximate the interior side of the frame," and "the connector being disposed proximate to the opening of the receptacle."

### A.  The apparatus of the '645 patent is unlike both the prior art and Gordini's LOBZ® stereo earmuff.

When viewed together, particularly when considering the prior art '950 patent cited against the '645 patent, the differences between the "apparatus" of the '645 patent and Gordini's LOBZ® stereo earmuff are apparent; *see, e.g.*, FIG. AA below.



**FIG. AA: Comparison of the '645 patent, Siskin '950 prior art and Gordini's LOBZ® stereo earmuff ('645 video at 4:30)**

Gordini's LOBZ® stereo earmuffs resemble the prior art Siskin earmuffs and do not include features required by the claims of the '645 patent. *See* FIG. AA (based on FIG. 2 of the '645 patent, Exh. 2; FIGS. 4 and 6 of U.S. Patent 6,888,950 to Siskin, et al. (hereinafter "Siskin"), Exh. 12; and Gordini's LOBZ® stereo earmuffs), *see* Oliver Decl., Exh. 7 at 17.

Specifically, the claims of the '645 patent require first and second membranes that define a receptacle that holds a speaker and an interior opening with a jack ("connector") for "communicating" with a device such as an iPod. The interior opening allows for continuous, uninterrupted access during use so that the user may connect his or her iPod to the jack positioned in the interior opening. *See* '645 patent, Exh. 2, col. 10, ll. 2-20.

In contrast, both Gordini's LOBZ® stereo earmuff and the prior art Siskin earmuff include an opening on the *exterior* surface of one of the ear pieces and something that extends through that exterior opening, i.e., a jack in the LOBZ® stereo earmuff and controls and a jack in Siskin. *See* FIG. AA, *supra*. Unlike the apparatus of the '645 patent, neither Gordini's LOBZ® stereo earmuff nor the Siskin earmuff includes an unimpeded opening on the interior surface.

## B. The scope of the claims of the '645 patent is narrow in view of the extensive prior art and 180s' prosecution history estoppel.

The claims of the '645 patent require simply an "apparatus" and not an ear warmer or earmuff. *See, e.g.*, '645 patent, Exh. 2, col 10, l.2. As with the '483 patent, the '645 patent claims a narrow improvement in this crowded field, which includes ear muffs, headphones, noise canceling devices, etc. *See* Oliver Decl., Exh. 7 at 16. The '645 patent certainly is not a "pioneer patent," as more than 200 references are printed on the first three pages of the '645 patent. '645 patent, Exh. 2, pp. 1-3. Accordingly, the claims of the '645 patent should be construed narrowly. *See Slimfold Mfg. Co. v. Kinkead Industries, Inc.*, 932 F.2d 1453, 1457-58

(Fed. Cir. 1991) (mechanical combination in a crowded field entitled to only narrow scope of



**FIG. BB**
**('645 video, Exh. 7B at 1:37)**

equivalents); *Quikey Mfg. Co. v. City Products Corp.*, 409 F.2d 876, 878 (6th Cir. 1969) ("the narrower the invention and the more crowded the art, the more strict will be the construction of the patent claims").

180s expressly limited the scope of its '645 claims to distinguish over the Siskin prior art. Oliver Decl., Exh. 7 at 16. This

came about because the Patent Office rejected the original claim 1 as anticipated by Siskin. *See* March 3, 2006 Office action, Exh. 13 at 5-6. FIG. BB, above, represents the ear warmer of Siskin, based, e.g., on FIGS. 4 and 6 of Siskin. Oliver Decl., Exh. 7 at 16; *see* '645 video, Exh. 8B at 1:37. As 180s admitted in its response to the rejection, "*Siskin* discloses an ear warmer … having an opening (110), through which a control portion (108) of the electronic component is extended." 180s' July 31, 2006 Response ("180s' Response"), Exh. 14 at 13.

In order to overcome the Patent Office rejection, 180s amended its claims to require that its apparatus has an "opening being disposed proximate the *interior* side of the frame." *Id*. (emphasis added); *see* '645 patent, Exh. 2, col. 10, ll. 11-12; *see* FIG. CC,



**FIG. CC**
**('645 video at 4:08)**

from '645 video, Exh. 8B at 4:08 (video), which shows a connection made via the interior side opening of the '645 patent.

180s argued that this amendment distinguished claim 1 over Siskin because modifying Siskin's opening to have its control portion extend through an interior opening "would impermissibly render it inoperative" during use.  180s' Response, Exh. 14 at 13.  180s argued that this modification "would result in the user being unable to operate the controls of the electrical device and/or remove the band or electronic devices."  *Id.*  "[E]xplicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations * * * [B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover."  *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998). Here, 180s explicitly argued to the Patent Office that the purpose of the claimed opening is to allow for components of the apparatus to pass from the interior to the exterior so that they are accessible to a wearer during use.  *See* 180s' Response, Exh. 14 at 13; *see* Oliver Decl., Exh. 7 at 18.  In addition, 180s' amendment indicates that the opening must be on the interior side and cannot be on the exterior side.  *See* '645 patent, Exh. 2, col. 10, ll. 11-12; 180s' Response, Exh. 14 at 13; *see* Oliver Decl., Exh. 7 at 16.

**C.  The claims of the '645 patent contain
    two key phrases that require construction.**

FIG. DD, which is FIG. 2 of the '645 patent labeled with claim terms of the asserted claims, is illustrative of the apparatus claimed in the '645 patent.  *See* '645 patent, Exh. 2, FIG. 2.

Asserted claim 1 of the '645 patent requires:

1. An apparatus, comprising:
a frame having an interior side and an exterior side, the frame being
   configured to extend around the back of a user's head;
a first membrane coupled to at least a portion of the interior side of the
   frame;
a second membrane coupled to one of the frame and the first membrane, the
   first membrane and the second membrane defining a receptacle and an
   opening that communicates with the receptacle, the opening being
   disposed proximate the interior side of the frame;
a speaker disposed in the receptacle; and
a first electrical wire having a first end electrically coupled to the speaker
   and a second end including a connector, the connector being disposed
   proximate to the opening of the receptacle and configured to be
   electrically coupled to a second electrical wire disposed outside of a
   housing of the device associated with sound generation.

*Id.* at col. 10, ll. 2-20.

The other asserted claims of the '645 patent all depend from claim 1. By definition, they are narrower than claim 1, requiring the limitations of claim 1, plus additional limitations. *See Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1376 (Fed. Cir. 2000).



**FIG. DD**

Consistent with the well-settled law set forth above with respect to the '483 patent, Gordini asks the Court to rule on the construction of two claim phrases, as a matter of law, which Gordini believes will narrow the issues in dispute in this case. As mentioned above, the two phrases are: "an opening that communicates with the receptacle, the opening being disposed proximate the interior side of the frame," and "the connector being disposed proximate to the opening of the receptacle." These phrases, when construed properly, will establish that 180s

cannot fulfill its burden of proving infringement of any claim of the '645 patent. *See* Oliver

Decl., Exh. 7 at 18. Gordini's proposed constructions for those and other phrases of the asserted

claims are discussed below and are summarized in a table at the end of this memorandum. *See*

Gordini's '645 patent claim constructions, Exh. 5.

**1. An Opening That Communicates With The Receptacle, The Opening Being Disposed Proximate The Interior Side Of The Frame**

As explained in greater detail below, the '645 patent requires an opening on the interior

side that remains unblocked and accessible to the wearer during use so that a wire and/or a

connector may allow the speaker to produce sound transmitted from a device such as an iPOD.

*See* Oliver Decl., Exh. 7 at 16-18.

**a. The "opening" must be interior.**

Claim 1 of the '645 patent explicitly states that the opening must be disposed proximate

the interior side of the frame. '645 patent, Exh. 2, col. 10, ll. 11-12. As discussed above, 180s

amended this claim to add this limitation during prosecution in order to distinguish over Siskin,

which includes an opening on the exterior side through which the housing holding its electronic

controls and jack extend. Claim 1, therefore, requires that the opening is an interior opening, and

180s is estopped from arguing that any other opening suffices, either literally or under the

doctrine of equivalents. *Festo Corp.*, 535 U.S. at 727; *see* Exh. 7 at 16.

**b. "Communicating" requires continuous, unimpeded access to the receptacle by the wearer during use to allow the user to connect and disconnect a device such as an iPOD.**

All of the asserted claims of the '645 patent require the apparatus have a first membrane

and a second membrane that define a receptacle. *See* claim 1, *supra*. The claims also require

"an opening that communicates with the receptacle." *Id*. *See* FIG. EE, below, which is an

enlarged portion of FIG. 2 of the '645 patent, with reference numerals replaced by their respective element names.

Turning to the specification, the '645 patent states that "opening 230 [is] *defined to provide access* to the receptacle 220." '645 patent, Exh. 2, col. 3, ll. 14-15 (emphasis added); *see* col. 4, ll. 9-10. As such, 180s defined the claimed opening to be more than an open space or gap. *See*



**FIG. EE**

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (inventor may serve as his own lexicographer, and the inventor's explanation in the patent controls over, e.g., dictionary definitions). According to the definition provided in the '645 patent, the opening must be an open space or gap through which something accesses the receptacle. *See* Oliver Decl., Exh. 7 at 17-18. For example, 180s admitted that the opening of Siskin allows for the control portion of its electrical component to extend to its exterior. 180s' Response, Exh. 14 at 13; *see* FIG. BB, reproduced below.

More specifically, as seen in FIG. EE, above, the openings shown in the '645 patent admit passage of the connector and/or one or more wires coupled to the connector, depending on whether the connector is stored inside or outside of the receptacle during use. *See, e.g.*, '645 patent, Exh. 2,



**FIG. BB**
**('645 video at 1:37)**

FIGS. 2, 10, 14 and 25 and col. 4, ll. 51-56 ("For example, the connector 450 can be disposed within a receptacle of the ear covering 100 such that the connector 450 is not visible and is not in direct contact with the user. Alternatively, in the event the connector is not stored, the shorter length of the wire will not render it cumbersome to the user.").

In addition to the requirement that communication requires something passing through the opening, communication also requires that the wearer have continuous and unimpeded access to the receptacle *during use*, i.e., in an operative way. *See* Oliver Decl., Exh. 7 at 18. 180s required both of these features during prosecution, and disclaimed any contrary construction, when it argued that placing Siskin's opening on the interior side would render it inoperable by making the wearer "unable to operate the controls of the electrical device and/or remove the band or electronic devices." 180s' Response, Exh. 14 at 13; *see Festo*, 535 U.S. at 727. This inoperability would only occur *during use*, when the wearer's head would be in the way. At any other time, the user's head would not inhibit access to the interior side of the ear warmer. *Cf.* FIG. BB, *supra*, illustrating that there is no inoperability argument if the earmuff is not on a user's head, because the entire interior surface would be accessible.

Moreover, 180s' inoperability argument with respect to modifying Siskin to have an internal opening would be nonsensical if the claims did not require something to pass through the opening during use. In this regard, operability only becomes an issue if there is something extending through the opening that the user wants to access but cannot. *See Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000) (prosecution history estoppel requires objective analysis to determine "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter."), quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc).

    **c.  180s ignores the arguments made during
prosecution and would construe claim elements
in light of Gordini's LOBZ® stereo earmuff.**

180s provided Gordini with a construction of "opening" as "an open space serving as a

passage or gap" and "communicates with" as "provides access to."  *See* 180s' January 19, 2010

letter with proposed constructions, Exh. 15 at 2.  In support of these constructions, 180s cites

"generally" to the specification of the '645 patent and to The American Heritage College

Dictionary, 4th ed.  *Id.*

180s errs by proposing constructions that ignore the limitations and context included in

its amendment and remarks to the Patent Office.  *See Medrad, Inc. v. MRI Devices Corp.*, 401

F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a

vacuum.  Rather, we must look at the ordinary meaning in the context of the written description

and the prosecution history."); *see also Phillips*, 415 F.3d at 1313 (same proposition).  In

particular, during prosecution, 180s admitted that something, e.g., a wire, connector, or a control

portion, must pass through the opening.  180s' Response, Exh. 14 at 13.  In addition, 180s'

inoperability argument with respect to Siskin requires that *during use*, the wearer must be able to

access the opening.  *Id.*; *see also* Section II.C.1.b, *supra*.

In addition, 180s errs by construing claim elements in light of Gordini's LOBZ® stereo

earmuff.  As the Federal Circuit has held:

> A claim is construed in the light of the claim language, the other claims, the prior
> art, the prosecution history, and the specification, not in light of the accused
> device…. [C]laims are not construed "to cover" or "not to cover" the accused
> device.  That procedure would make infringement a matter of judicial whim.  It is
> only after the claims have been construed without reference to the accused device
> that the claims, as so construed, are applied to the accused device to determine
> infringement.

*Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc).

In its November 12, 2009 response to Gordini's interrogatory on claim construction for the '645 patent, 180s did not produce claim constructions.  Instead, it produced a claim chart with its infringement contentions.  *See* 180s' Response to Gordini's Sixth Interrogatories, Exh. 16 at 4-5 and its accompanying Exhibit A.

| Claim | Claim Elements of U.S. Patent No. 7,212,645 | The Accused Products |
|---|---|---|
| 1.5 | the first membrane and the second membrane defining a receptacle and an opening that communicates with the receptacle, the opening being disposed proximate the interior side of the frame; | The first membrane (300) and the second membrane (400) define a receptacle (500) and an opening (600) that communicates with the receptacle (500).  The opening (600) is disposed proximate the interior side (210) of the frame (200).<br> |

**FIG. FF**

As seen in FIG. FF, at right, which is a part of 180s' infringement contentions, 180s completely removed and discarded the piece of fabric on Gordini's LOBZ® stereo earmuff that contacts a user's ear, partially removed a second piece of internal fabric (labeled 400), and then attempted to construe the claims of the '645 patent in view of this disassembled state. *Id*. at its Exh. A, p. 4. This procedure results in an incomplete, inaccurate depiction of Gordini's LOBZ® stereo earmuff and portrays the LOBZ® stereo earmuff in a state that a typical user will never experience.  Oliver Decl., Exh. 7 at 18.

Thus, the Court should reject 180s' proposed constructions and adopt Gordini's construction of the claim phrase "an opening that communicates with the receptacle, the opening being disposed proximate the interior side of the frame." *See* Gordini's '645 patent claim construction, Exh. 5 and Oliver Decl., Exh. 7 at 16.  A proper construction recognizes that the opening is a port that is positioned near and within the inside surface, i.e., the surface closest to

29

the user's head when worn.  In addition, the opening must be unimpeded because something

such as a wire or jack must pass through the opening when the apparatus is worn by a user in

order to connect the speaker to a device such as an iPod.  Gordini's proposed construction has a

meaning supported and based on the specification and figures of the '645 patent, when viewed in

light of the prosecution history estoppel and context introduced by 180s during prosecution of

the application that issued as the '645 patent.

> **2.  The Connector Being Disposed Proximate
> To The [Interior] Opening Of The Receptacle**

Claim 1 of the '645 patent also requires that the jack or "connector" is disposed

proximate to the interior opening of the receptacle.  '645 patent, Exh. 2, col. 10, ll. 16-17.

> **a.   The jack must be proximate the interior side
> of the frame, near or within the opening.**

As stated above, 180s amended its claims to require that the opening be disposed

proximate the *interior* side of the frame, and it explicitly disclaimed any construction that would

locate the opening on the *exterior* side of the frame.  180's Response, Exh. 14 at 13; *see* Oliver

Decl., Exh. 7 at 16.  As such, the jack must be located proximate the interior side of the frame, as

seen in FIG. GG (derived from FIG. 2 of the '645 patent), because the jack must be located near

or within the opening, and the opening must be located on the interior side of the frame.  *See*

*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) (construe claim

elements with an eye to their context in the claim as a whole); *Abbott Labs. v. Syntron*

*Bioresearch, Inc.*, 334 F.3d 1343, 1351 (Fed. Cir. 2003) (usage of disputed claim terms in the

context of the claims as a whole informs the proper construction of the terms); *see* Exh. 2, FIG.

2.

**b.  180s' proposed construction of "disposed proximate"
ignores the context in which that phrase is used in the claims.**

180s proposed a construction of the phrase "disposed proximate," *see* Exh. 15 at 2, but its

proposed construction is devoid of context in that it ignores the requirement that the *connector*

must be disposed proximate the opening.  '645 patent, Exh. 2, col. 10, ll. 16-17.  As stated above,

the specification and the prosecution history create functional requirements for the opening and

specifically locate the opening on the interior side of the frame.  *See* Section II.C.1, *supra.*



**FIG. GG**

Thus, the Court should

construe the phrase "the connector

being disposed proximate to the

opening of the receptacle" as "the jack

for establishing an electrical

communications connection being

positioned near and within the interior

port through which a wire passes and

connects to the jack so positioned in the receptacle."  This construction gives meaning to the

phrase in context and has a meaning supported by the claim when read as a whole, in view of the

specification and the prosecution history estoppel introduced by 180s.  *See* Gordini's '645 patent

claim constructions, Exh. 5 for full construction.

**D.  180s waived any proposed constructions of the
remaining elements of the claims of the '645 patent.**

As with the '483 patent, in addition to the claim constructions highlighted above,

Gordini's proposed constructions for the other phrases of the asserted claims of the '645 patent

are summarized in an attached exhibit.  *Id.*  Also as with the '483 patent, 180s dispute of

Gordini's proposed constructions of the elements of the '645 patent and its proposed blanket "ordinary meaning" approach came after the Court's February 2, 2010 deadline for the exchange of proposed constructions.  *See* 180s' February 4, 2010 email, Exh. 11.

180s' conclusory statement and "ordinary meaning" approach, without more (including details, explanations, alternative proposed constructions, and context) does not rise to the level of a good faith dispute regarding the other phrases of the asserted claims and should be given no weight.  *See WhitServe*, 2006 WL 1273740 at 3 ("party offering a vague formulaic response to a claim construction interrogatory may be precluded from offering any further evidence of claim interpretation at later stages in the litigation"); *cf.* Rule 56(e)(2), Fed. R. Civ. P. (party opposing summary judgment may not rely solely on allegations or denials but must set forth specific facts).  The Court should bar 180s from advancing constructions on claim terms that it did not present in response to Gordini's interrogatories and did not present by the February 2, 2010 deadline.  In sum, constructions for the terms not discussed herein are undisputed for all purposes relevant here and should be adopted by the Court.  *See* Gordini's '645 patent claim constructions, Exh. 5.

**E.  When the claims are construed correctly, 180s cannot fulfill its burden of proving infringement of any asserted, valid claim of the '645 patent.**

First, all of the asserted claims of the '645 patent require an opening that communicates with a receptacle, the opening disposed proximate the interior side of the frame, such that the opening is accessible by the wearer



**FIG. CC**
**('645 video at 4:08)**

during use so that the wearer can connect the speakers to a device such as an iPOD via the jack. *See* '645 patent, Exh. 2, col. 10, ll. 10-12; *see* FIG. CC, reproduced above; Oliver Decl., Exh. 7 at 16-18.



**FIG. GG**
**(LOBZ® Video at 0:34)**

As seen in FIG. GG, at left, Gordini's Lobz® stereo earmuff does not include an opening on the interior side that is accessible by the wearer during use, and no connection is made via any interior opening at any time. *See* Oliver Decl., Exh. 7 at 18.

Second, the claims of the '645 patent require that the jack is disposed proximate to the opening, which is required to be on the interior side of the frame. *See* '645 patent, Exh. 2, col. 10, ll. 16-17.  In contrast, Gordini's LOBZ® stereo earmuff includes a speaker in each ear piece and a jack that extends through an opening on the *exterior* surface of one of the ear pieces, as seen in



**FIG. HH**
**(LOBZ® Video at 0:10)**

FIG. HH, at right.  *See* Oliver Decl., Exh. 7 at 17.  This configuration is similar to what is

disclosed in the prior art Siskin reference, i.e., the reference that required 180s to amend its claims to require that the opening be on the *interior* surface.  *Id.*

In sum, this Court's adoption of either or both of the constructions for the phrases discussed above will lead to judgment as a matter of law that Gordini's LOBZ® stereo earmuff does not infringe claim 1 of the '645 patent.  Oliver Decl., Exh. 7 at 18.  In addition, since 180s cannot prove infringement of claim 1, it is axiomatic that it also cannot prove infringement of asserted claims 2-4 and 7-15 that depend from claim 1.  *See Wahpeton Canvas*, 870 F.2d at 1552 n. 9.

### III. The '001 Design Patent

180s' U.S. Design Patent D545,001 ('001 design patent), *see* Exh. 3, has a single claim purporting to cover an "ornamental design for an ear warmer having an external frame, as shown and described," while disclaiming everything shown in "broken lines" except a fold line, as discussed below.  After subtracting the disclaimed broken lines, all that remains is a very small left-side portion of an earmuff headband, with a fold line showing where the earmuff bends.  *See* FIG. AAA, *cf.* '001 design patent, Exh. 3, FIG. 1.



**FIG. AAA**

### A.   Where to find information relevant to the '001 design patent

The '001 patent is attached as Exh. 3.  Constructions for the '001 patent are attached as

Exh. 6.  See also Oliver Decl., Exh. 7 at 12-15, and the movie "180s_001_Patent.wmv" on the

CD, Exh. 8C, filed with the Court and delivered to Chambers. A narrative of the movie is

provided by Dr. Oliver at page 15 of his expert report, Oliver Decl., Exh. 7 at 15. The broken

lines in the figures of the '001 patent (except for the fold line shown within the solid-line

portion) form no part of the claimed design.  *See* Manual of Patent Examining Procedure

("MPEP") 1503.01, *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001)

(broken lines form no part of claimed design).

### B.   Issues for Markman claim construction of '001 design patent

Regarding the '001 design patent, this Court is requested, based on *Egyptian Goddess,*

*Inc. v. Swisa*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) and the facts of this case, to decide

the following Markman claim construction issues:

1.   Whether the '001 design patent claim is limited to the small portion shown in solid lines, including the jagged solid lines at the left and right ends and the broken fold line, the other broken lines being disclaimed.

2.   Whether there are any ornamental (rather than functional) features in the small claimed portion that joins the headband member and the left ear frame member.

3.   After subtracting unprotectable functional features, what if any ornamental features in the claimed design portion are present:  (a) in the prior art and (b) in the accused Gordini earmuff.

See Egyptian Goddess, 543 F.3d at 679.

### C.   Claim construction for the '001 design patent

Claim construction by the trial court is required in every patent case, *Markman*, 52 F.3d

at 976, and it is only after this step that the question of alleged infringement can be decided.  The

Federal Circuit, sitting en banc, has reiterated its longstanding rule that "trial courts have a duty

to conduct claim construction in design patent cases" before considering the question of alleged infringement.  *Egyptian Goddess*, 543 F.3d at 679.  Claim construction also is preliminary to invalidation of a design patent for lack of any one or more of the requirements that the claimed design must be "new, original, and ornamental."  35 U.S.C. § 171.

The Federal Circuit does not require any particular form of claim construction in design patent cases, and it does not always require detailed verbal descriptions, see *Egyptian Goddess*, 543 F.3d at 679, but it does require detailed verbal descriptions in cases of obviousness, see *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 102 (Fed. Cir. 1996), cited with approval in *Egyptian Goddess* at 679 n. 1, and in cases of functionality, see *Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) also cited with approval in *Egyptian Goddess* at 680. Here, functionality and obviousness are key issues, thus, a detailed verbal description of the '001 claimed design portion is required, particularly with reference to any ornamental "features of the claimed design as they relate to the accused design and the prior art," *Egyptian Goddess* at 680.

The Federal Circuit has rejected the arguments advanced here by 180s, *see* Doc. 111, "that a simple comparison of the accused products with the figures in the design patent is all that is required in an infringement inquiry" or that "the scope of a design patent is effectively determined by deciding infringement rather than by construing the claim." Oddzon, 122 F.3d at 1404, cited with approval in Egyptian Goddess.

1.  **Construction requires describing the conventions in design patent drafting, i.e.,  the role of broken lines and solid lines.**

Under *Egyptian Goddess*, 543 F.3d at 680, the district court's duty to construe a design patent claim includes "describing the role of particular conventions in design patent drafting such as the role of broken lines, *see* 37 C.F.R. § 1.152."

36

The small claimed portion of the '001 design patent is as follows:



**FIG. BBB**

"Full [or solid] lines in the drawing show the claimed design."  *See* MPEP 1503.01.  See *In re Blum*, 374 F.2d 904, 907, 153 USPQ 177, 180 (CCPA 1967) (there are "*no* portions of *a design* which are 'immaterial' or 'not important.' A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design."). Thus, in the '001 patent, the solid jagged lines at the left and right sides of the small claimed portion are required by the claim and no infringement can be found unless those jagged lines are physically and visibly present in the accused Gordini earmuff.

Broken lines are used to show unclaimed "environment" and to define the bounds of the claim," MPEP 1503.02 (III. Broken Lines); 37 CFR 1.152, and they also are used to identify claimed "fold lines," as in the fold line in the '001 patent shown within the solid lines of the small left-side portion.  Thus, the fold line shown inside the small left-side portion of the earmuff headband is a part of the claimed '001 design.

Gordini has construed the small claimed portion of the '001 design patent as including the following characteristics:

- A small left-side portion, having the shape and proportions shown, in an external ear warmer frame, that tapers, when viewed from the side, between a forward end and a rear end;

- Jagged forward and rear edges; and

- Top and bottom concave arcuate edges;

- Wherein the small left-side portion is substantially asymmetrical around a horizontal axis of rotation extending between the forward edge and the rear edge.

*See* Exh. 6.  For its part, 180s offered no construction of its own '001 patent and, having failed to submit a proposed construction in response to Gordini's interrogatories, and having failed to comply with this Court's order that all relevant constructions must be filed and served no later than February 2, 2010, 180s should be barred from offering any construction, and Gordini's construction should be adopted by the Court.

**2.   A design patent is limited to ornamental not functional features.**

Under *Egyptian Goddess*, 543 F.3d at 680, the district court's duty to construe a design patent claim includes distinguishing between those features of the claimed design that are ornamental and those that are functional.  *See also Oddzon*, 122 F.3d at 1405.

Here, the small left-side portion claimed in the '001 patent has no ornamentality but only the functional purpose of connecting the back of an unclaimed, conventionally narrow headband member to an unclaimed earpiece member.



**FIG. CCC**
**('001 video at 0:22)**

Indeed, as observed by expert Dr. James H. Oliver, if one starts with the unclaimed

portions shown in broken lines (or ghost shapes)—





**FIG. DDD**                                        **FIG. EEE**
**('001 video at 0:29)**

There is only one logical way to "fill in the blank," namely, to provide the missing piece, the

design of which is directly solely by function.  *See* Oliver Decl., Exh. 7 at 13.

If a design such as that claimed by the '001 patent is primarily functional, it is invalid.

*Best Lock Corp. v. Ilco Unican Corp.*, 94 F. 3d 1563, 1565-66 (Fed. Cir. 1996).  Moreover, a

design patent that lacks ornamentality is entitled to only a narrow construction that is likely to

lead to a finding of non-infringement.  *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67

F. 2d 428, 430 (6th Cir. 1933), cited with approval in *Egyptian Goddess* at 674-75; *Read Corp. v.

Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992) (distinguishing *Gorham v. White*, 81 U.S. 511

(1871) as involving *only* ornamental features, in contrast to case involving unprotectable

functional elements).  Moreover, for ornamental features to be protectable, they must be novel

and ingenious, *see Smith v. Whitman Saddle*, 148 U.S. 674 (1893).

What is ornamental, rather than functional, in '001?   Gordini has unequivocally stated for more than one year that the claimed small portion is functional:   It bridges the unclaimed headband section of an earmuff (see broken or ghost lines) and unclaimed earpiece section of an earmuff (see broken or ghost lines).  *See* FIG. CCC; Oliver Decl., Exh. 7 at 13; '001 video, Exh. 8C



**FIG. CCC**
**('001 video at 0:22)**

The burden has been on 180s to come forward and specifically identify any allegedly ornamental aspects of the '001 design.  Its failure to do so makes it appropriate and timely for this Court to enter judgment in favor of Gordini on the issues of invalidity and/or non-infringement based on functionality and lack of ornamentality in the '001 design.  *See Oddzon* at 1399 (summary judgment of non-infringement affirmed by Federal Circuit where patent owner failed to come forward with evidence of confusion based on ornamental features); *Power Controls v. Hybrinetics*, 806 F.2d 234, 238-39 (Fed. Cir. 1986) (denying preliminary injunction based on failure of patent owner to overcome showing of invalidity based on functionality or lack of ornamentality).

180s' small left-side portion '001 design patent is invalid "for the simple reason that it is not 'ornamental—was not created for the purpose of ornamenting," *In re Carletti*, 328 F. 2d 1020, 1022 (CCPA 1964), but instead was dictated mainly by "functional considerations," and even if "attractive or pleasant to behold," that is not enough to sustain it.  *Id.*  Nor will it suffice, if argued by 180s, that the small left-side portion could have been "less gracefully arranged," because it is at this point that "obviousness enters into this case." *Id.*  An obvious arrangement— the "mere avoidance of dissymmetry"—that is "done without thought of ornament" does not rise to the level of "creation or origination of an ornamental design" and is therefore not a valid subject for a design patent. *Id.*  (functional gasket design is unpatentable).

### 3. Egyptian Goddess directs the trial court to point out various ornamental features of the claimed design as they relate to the accused design and the prior art.

What ornamental features can be identified in the '001 claimed design of a small left-side portion of an earmuff band?



**FIG. BBB**

### a.  Ornamental features disclosed in the prior art

Under *Egyptian Goddess*, 543 F.3d at 680, the district court's role in design patent claim construction includes the duty to "point out…various [ornamental] features of the claimed design as they relate the accused design [discussed in the section below] and the *prior art* [discussed in this section]."  In a crowded field of prior art, the scope of protection of a design patent is limited to "a narrow range" that has resulted in a finding of non-infringement. *Id.* at 676.

The prior art for the '001 design patent is extremely broad spanning the public domain and prior art patents.  Oliver Decl., Exh. 7 at 12.  Earmuff-like devices are common and have many more uses than just retaining body heat around the ears. *Id.*  Thus the body of prior art from which to draw is vast.  *Id.*  A few examples are shown below followed by a brief discussion of each.



A representative example of prior art that is similar to '001 is US Patent Des. 305,541 ('541) – "Headphone," Sharp Corp., 1990. Like '001, patent '541 makes a single claim, namely, "The ornamental design for a headphone, as shown and described."

U.S. Patent Publication 2006/00015989 ('989) – "Ear Protection Device," Faussett, et al., 2006, also incorporates design elements similar to '001.

Another example of prior art relevant to '001 is US Patent 6,195,806 ('806) – "Ear Protector," Campbell, 2001, a figure from which is shown above.

As stated by expert Dr. Oliver, each prior art reference discloses an earmuff-like device, namely, '541 for delivering sound, '989 for hearing protection, and '806 for protecting ears during hair care treatment.  Each can serve as an anticipating reference under 35 U.S.C. 102 and as a primary reference under 35 U.S.C. 103.  This speaks to the vast body of prior art related to

devices comprised of connected earpieces.  They are all characterized by some physical connection between a band-like device and two earpieces.

> **b.   Egyptian Goddess imposes a duty to point out
> various ornamental features of the claimed design
> as they relate to the *accused design* and the prior art.**

The usual rule is for the trial court to "point out…various [ornamental] features of the claimed design as they relate to the *accused design* and the prior art," *Egyptian Goddess*, 543 F.3d at 680, but in "some instances," as in the case at bar, "the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patenteee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer."

**Conclusion**

For the foregoing reasons, Gording respectfully requests that the Court construe the claim terms of the patents-in-suit as proposed above.


Dated:  February 16, 2010

Respectfully submitted,

/s/Patrick R. Buckler
Patrick R. Buckler
(MD Fed. Bar No. 25943)
Spence & Buckler, P.C.
100 West Pennsylvania Ave., Suite 301
Towson, Maryland 21203
Telephone: (410) 823-5003
Fax: (443) 927-8905
pat@spencebucklerlaw.com

43

Robert H. Smeltzer
(admitted *pro hac vice*)
Lowis & Gellen LLP
200 West Adams Street, Suite 1900
Chicago, Illinois 60606
Telephone: (312) 364-2500
Fax: (312) 364-1003
rsmeltzer@lowis-gellen.com

Richard P. Beem (admitted *pro hace vice*)
richard@beemlaw.com
Allison M. Williams (admitted *pro hace vice*)
awilliams@beemlaw.com
Beem Patent Law Firm
53 W. Jackson Blvd., Suite 1352
Chicago, IL 60604
Telephone: (312) 201-0011
Fax: (312) 201-0022

ATTORNEYS FOR DEFENDANT,
GORDINI U.S.A., Inc.